NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| PINE BELT ENTERPRISES, INC., | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civil Action No. 04-105 (SRC) |
| | : | |
| SC&E ADMINISTRATIVE SERVICES, INC., AMERICAN PRIME ASSET, INC., PRUDENTIAL SECURITIES, INC., | : | **O P I N I O N** |
| | : | |
| Defendants. | : | |

**CHESLER,** District Judge

This matter comes before the Court on a Motion for Summary Judgment (docket item #27) by Defendant, Prudential Securities, Inc., with respect to Plaintiff's claims of (1) Breach of Fiduciary Duty; (2) Breach of Implied Covenant of Good Faith and Fair Dealing; (3) Breach of Trust Agreement; (4) Misrepresentation; (5) Negligence; (6) Conversion; and (7) Detrimental Reliance.  Having considered the parties' written and oral arguments, and for the reasons set forth below,  the Court **grants** Defendant's Motion for Summary Judgment.

**I.  FACTUAL BACKGROUND**

Plaintiff Pine Belt Enterprises, Inc. ("Pine Belt") is an automobile dealership and service center located in Lakewood, NJ.  On or about October 6, 2000, Pine Belt entered into a Smart Choice Dealer Agreement with SC&E ("SC&E Agreement") authorizing Pine Belt to sell

extended warranty or service contracts to its customers. (Compl. ¶ 10.) The Smart Choice program was offered by National Warranty Insurance Company ("National Warranty") and was marketed by SC&E. The SC&E Agreement required SC&E to secure insurance indemnification as well as to operate, coordinate and administer the "Service Agreement Program" on Pine Belt's behalf. (Compl. ¶¶ 11-12.) Under the program, Pine Belt sold Vehicle Service Contracts ("VSC") that provided extended warranty or service contracts to its customers. (Compl. ¶ 10.)

In addition to the SC&E Agreement, Pine Belt also entered into a Smart Choice Profit Participation Addendum ("Addendum") with American Prime Asset ("American Prime") and National Warranty Insurance Company ("National Warranty"). (Compl. ¶ 14.) The Addendum obligated American Prime to establish an Insurance Premium Account with Prudential and to appoint an authorized representative of National Warranty as a designated trustee of the account. (Compl. ¶ 15.) The Addendum further provided that upon the submission and payment of 100 VSCs by Pine Belt, an authorized representative of Pine Belt would be named a co-trustee on the account held with Prudential. (Compl. ¶ 16.) Prudential was not a signatory to the Addendum. (Def.'s Br. 4.)

Pursuant to the Addendum, on January 22, 2001, American Prime established an account with Prudential titled "American Prime Assets/Escrow Agent FBO PEI Insurance/Escrow Account" ("Account")**.** (Def's. Stat. of Undisp. Mat. Facts ¶ 8.) Under the Smart Choice program, Pine Belt would remit the proceeds of VSC sales to National Warranty, and National Warranty would subtract certain fees and expenses and remit the balance to Prudential. (Cohen Dep. 19:17- 20:13, July 21, 2004.) A portion of the purchase price from each VSC sold by Pine Belt was deposited into the Account to satisfy authorized claims submitted under the plan.

(Compl. ¶ 17.)

The documents opening the Account were signed only by John Sauers of American Prime. (Decl. of Cohen, ¶ 3.) Among the documents was a Fiduciary Certification of Investment Powers ("Fiduciary Certification") which listed four fiduciaries: Donald G. Erway, R. Steven Miller, and Randal G. Erway of National Warranty; and John Sauers of American Prime. (Decl. of Cohen Ex. A; <u>see</u> <u>also</u> Pl. Stat. of Undisp. Mat. Facts in Opp'n 8 ¶ 4.) Pine Belt was not listed as an authorized fiduciary on the Account[1]. (Decl. Of Cohen Ex. A.) The Fiduciary Certification authorized Prudential to accept instructions, including authorization to receive and disburse monies, from named fiduciaries only. (<u>Id.</u>) At the request of American Prime, Prudential sent copies of the monthly statements for the Account to both Donald Erway of National Warranty, and David Sicket of Pine Belt. (Decl. of Cohen ¶ 6.)

In November 2002, John Sauers of American Prime instructed Prudential to create another account entitled "Consolidation Number 2." (Cohen Dep. 46:1-3.) By letter dated November 11, 2002, Donald Erway of National Warranty instructed Prudential to move the assets from the Account, as well as other American Prime accounts, to the Consolidation Number 2 account. (Def.'s Stat. of Undisp. Mat. Facts ¶ 18.) Another letter, sent by Donald Erway on November 26, 2002, instructed Prudential to move all the assets from the Consolidation Number 2 account to a National Warranty account at Prudential. (<u>Id.</u> ¶ 20.) On December 30, 2002, Barry Lake, the new president of National Warranty, instructed Prudential to wire all the money from the National Warranty account to a National Warranty account at Wells

---

[1] Although Pine Belt did ultimately sell over 100 VSCs, Prudential was never directed to change or add any fiduciaries to the account. (Def.'s Stat. of Undisp. Mat. Facts ¶ 16.)

Fargo.  (Cohen Dep. 57:5-19.)

National Warranty has not authorized payment for any claims tendered pursuant to a VSC since November of 2002.  (Compl. ¶ 23.)  In June of 2003, National Warranty was declared insolvent under the laws of the Cayman Islands and filed bankruptcy in United States Bankruptcy Court in Nebraska.  (Pl. Stat. of Undis. Mat. Facts in Opp'n ¶ 19.)  Pine Belt claims to have incurred damages as a result of claims that National Warranty would no longer honor under the VSCs.  (Compl. ¶¶ 24-25.)

Pine Belt filed its Complaint in this action on January 8, 2004 against SC&E, American Prime, and Prudential.  On February 14, 2005, this Court entered an Order granting Pine Belt a default judgment against both SC&E and American Prime.  The remaining causes of action against Prudential are for breach of fiduciary duty, breach of the implied covenant of good faith and fair dealing, breach of trust agreement, misrepresentation, negligence, conversion, and detrimental reliance.

## II. PRUDENTIAL'S MOTION FOR SUMMARY JUDGMENT

### A. Standard of Review

Federal Rule of Civil Procedure 56(c) provides that summary judgment should be granted "if pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, (1986); Kreschollek v. Southern Stevedoring Co., 223 F.3d 202, 204 (3d Cir. 2000).  In deciding a motion for summary judgment, a court must construe all facts and inferences in the light most favorable to the nonmoving party.  See Boyle v.

Allegheny Pennsylvania, 139 F.3d 386, 393 (3d Cir. 1998).  The moving party bears the burden of establishing that no genuine issue of material fact remains.  See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

The Supreme Court has stated that in evaluating a defendant's motion for summary judgment:

> [t]he judge must ask . . . not whether . . . the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented.  The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.  The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of evidence that the plaintiff is entitled to a verdict . . . .

Anderson, 477 U.S. at 252.  A fact is "material" only if it will affect the outcome of a lawsuit under the applicable law, and a dispute over a material fact is "genuine" if the evidence is such that a reasonable fact finder could return a verdict for the nonmoving party.  See id.

Once the moving party has properly supported its showing of no triable issue of fact and of an entitlement to judgment as a matter of law, the non-moving party "must do more than simply show that there is some metaphysical doubt as to material facts."  Matsushita, 475 U.S. at 586; see also Anderson, 477 U.S. at 247-48.  The non-moving party must "go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'"  Celotex, 477 U.S. at 324; Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992) ("to raise a genuine issue of material fact . . . the [non-moving party] need not match, item for item, each piece of evidence proffered by the movant," but rather "must exceed the 'mere scintilla' threshold"), cert. denied, 507 U.S. 912 (1993).

### B. Breach of Fiduciary Duty

Count Three of the Complaint claims that Prudential owed Pine Belt a fiduciary duty to ensure that all payments made from the Account were duly authorized by Pine Belt as a co-trustee. (Compl. ¶ 50.)  Plaintiff claims this duty was breached by acts and/or omissions of Prudential that resulted in the Account being entirely depleted without notice to, or the authorization of, Pine Belt.  (Id. ¶ 51.)

Prudential contends it owed no fiduciary duty to Pine Belt as a matter of law.  Prudential argues they had no relationship with Pine Belt and no representative of Pine Belt was an account holder nor named fiduciary on the Account.  (Def. Br. 7.)   In response, Pine Belt argues that Prudential's involvement with the Account may have risen to a level creating a quasi-fiduciary duty. (Pl. Br. 18.)

Under New Jersey law, a fiduciary relationship exists where one party is "under a duty to act for or give advice for the benefit of another on matters within the scope of their relationship." In re Cendant Corp. Sec. Litig., 139 F. Supp. 2d 585, 609 (D.N.J. 2001).  To succeed on a claim for breach of a fiduciary duty a plaintiff must demonstrate that the relationship between the parties presumes a fiduciary duty, or because of the circumstances of the parties specific relationship, a fiduciary relationship has arisen or can be implied.  See Nicholas v. Saul Stone & Co., LLC, 1998 WL 34111036 *20-21 (D.N.J. 1998).

Pine Belt relies on Kronfeld v. First Jersey Nat. Bank, 638 F. Supp. 1454 (D.N.J. 1986), arguing that a quasi-fiduciary duty may have arisen due to Prudential's role in managing the Account. (Pl. Br. 18.)   In Kronfeld, the court relied heavily on a line of cases holding that a stockbroker "may have a quasi-fiduciary duty toward his customer, depending on the facts of the

individual relationship." 638 F. Supp. at 1467. The court also noted that a fiduciary duty may arise if the defendant-broker serves in an advisory capacity or is under an obligation of trust or confidence. Id.

This argument does not advance Pine Belt's claim because American Prime, not Pine Belt, was the Account holder. Moreover, Plaintiff has not produced evidence showing that Pine Belt reposed trust or confidence in Prudential from which a relationship of trust and confidence could be inferred. Pine Belt was not named as a co-trustee on the Account despite the Addendum. Prudential was not a party to the Addendum and there is no evidence that it had knowledge of the existence of the Addendum. The only communication between Prudential and Pine Belt in reference to the Account was monthly statements sent by Prudential at the behest of its client, American Prime.

Moreover, a broker will generally not owe a fiduciary duty to its client when the account held is non-discretionary[2]. See McAdam v. Dean Witter Reynolds, Inc., 896 F.2d 750, 767 (3d Cir. 1990); Commodity Futures Trading Comm'n v. Heritage Capital Advisory Servs., Ltd., 823 F.2d 171, 173 (7th Cir 1987). American Prime's Account with Prudential was non-discretionary; American Prime made all investment decisions. (Def.'s Stat. of Undisp. Mat. Facts ¶ 8; Decl. of Cohen Ex. A.) Therefore, since Prudential likely did not owe a fiduciary duty even to its customer American Prime, it certainly owed no duty to Pine Belt. Accordingly, summary judgment as to Count Three is granted.

---

[2]The distinction between a discretionary and non-discretionary account turns on whether the customer or the broker determines which sales and purchases to make. McAdam v. Dean Witter Reynolds, Inc., 896 F.2d 750, 766 (3d Cir. 1990)(citing Leib v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 461 F. Supp. 951 (E.D. Mich. 1978).

**C. Breach of the Implied Covenant of Good Faith and Fair Dealing**

Count Four of the Complaint claims that SC&E and American Prime, through their acts and omissions in relation to the SC&E Agreement, breached the covenant of good faith and fair dealing they owed to Pine Belt. (Compl. ¶ 56.) Plaintiff appears to seek a judgment and damages against Prudential for this breach.[3]

Absent evidence of a contract, there can be no breach of an implied covenant of good faith. Fregara v. Jet Aviation Bus. Jets, 764 F. Supp. 940, 954 (D.N.J. 1991). Here, Pine Belt has introduced no evidence that it and Prudential were parties to any contract. Indeed, Prudential was not a party to the SC&E Agreement nor the Addendum and Pine Belt was not a signatory on the Account and was not named as a trustee. In response, Plaintiff argues they are a third-party beneficiary to the contract between Prudential and American Prime. (Pl. Br. 14.) Even drawing all reasonable inferences in Plaintiff's favor, Pine Belt has failed to assert facts necessary to create an issue of fact as to whether or not a contract existed between it and Prudential.

Plaintiff's third-party beneficiary theory is similarly deficient. Under New Jersey law, a third-party beneficiary may sue upon a contract made for their benefit without privity of contract. Houdaille Constr. Materials, Inc. V. Am. Tel. & Tel. Co., 166 N.J. Super 172, 184-185 (Law Div. 1979). To qualify as a third-party beneficiary a claimant must demonstrate that the contract was made for its benefit "within the intent and contemplation of the contracting parties." First Nat'l State Bank of New Jersey v. Commonwealth Fed. Sav. & Loan Ass'n, 610 F.2d 164, 170

---

[3] The allegations in Count Four of the Complaint do not specifically mention any actions or omissions by Defendant Prudential that breached an implied covenant of good faith and fair dealing. Prudential is named in the "wherefore" clause of Count Four however, suggesting that Plaintiff seeks relief from Prudential for this claim.

(3d Cir. 1980).  The claimant must show something more than that "the contracting parties acted against a backdrop of knowledge that the plaintiff would derive benefit from the agreement... [T]he benefit to plaintiff must have been, to some extent, a motivating factor in the parties' decision to enter the contract."  Grand Street Artists v. General Elec. Co., 19 F. Supp. 2d 242, 253 (D.N.J. 1998) (internal quotations omitted).  A third-party who merely stands to benefit from a contract is nothing more than an incidental beneficiary who possesses no contractual right to enforce the contract.  Id.

The Court finds that Plaintiff was not an intended third-party beneficiary to the American Prime contract with Prudential.  The evidence, viewed in a light most favorable to the Plaintiff, shows only that Pine Belt may have derived some benefit from the Account.  No evidence in the record shows that Prudential entered into the agreement with American Prime opening the Account intending to provide a benefit to Pine Belt. The only evidence offered by Plaintiff to suggest that Pine Belt was an intended beneficiary to the agreement is the title of the Account. The fact that Prudential may have known that Pine Belt existed is insufficient to convert Pine Belt into an intended third-party beneficiary.

Plaintiff also points to the Addendum in support of its third-party beneficiary theory.  (Pl. Br. 13.)  The Addendum, however,  was signed only by Pine Belt and American Prime, not by Prudential.  Indeed, Pine Belt would not need to be construed as a third-party beneficiary to enforce the Addendum because they were a signatory on the document.  Thus, Plaintiff's third-party beneficiary theory does not apply to the Addendum.

The Court therefore finds that no implied covenant of good faith and fair dealing existed between Prudential and Pine Belt and, therefore, summary judgment as to Count Four is granted.

### D.  Breach of Trust Agreement

Count Five of the Complaint claims that Prudential breached a Trust Agreement with Pine Belt. (Compl. ¶ 63.)  Plaintiff argues that Pine Belt was intended to serve as a co-trustee on the Account opened by American Prime and the distribution of funds from that account without Pine Belt's authorization was therefore a breach of a Trust Agreement.  (Id. ¶ 60-62.)

It is not clear what agreement Plaintiff is referring to as a Trust Agreement.  The allegations in Count Five suggest Plaintiff is referring to either the SC&E Agreement or the Addendum.  Prudential was not a party to either agreement.  Furthermore, the undisputed facts show that Prudential did not have an obligation to notify Pine Belt or to receive its authorization before releasing funds in the Account.  Prudential's obligation was to follow the directions given to it by named fiduciaries on the Account.  No principal from Pine Belt was ever named, or added as a fiduciary on the Account.

The Court finds that no Trust Agreement existed between Prudential and Pine Belt. Accordingly, summary judgment as to Count Five is granted.

### E.  Misrepresentation

Plaintiff claims in the Sixth Count of it's Complaint that Prudential misrepresented that funds deposited into the Account would be segregated from all other Program accounts and be used exclusively for the payment of authorized claims submitted under VSCs.  (Compl. ¶ 65.) Plaintiff claims that as a result of these misrepresentations, and the ultimate depletion of the Account for reasons other than the payment of authorized claims, Plaintiff has suffered, and will continue to suffer, damages.  (Id. ¶¶ 66-67.)

The record before this Court does not contain any representations by Prudential to Pine Belt regarding how the Account would be administered.  Further, the record contains no evidence that Prudential promised anyone that the funds in the Account would be segregated at all times or be used solely for payment of claims.  Rather, the Account fiduciaries had control of the use and transfer of funds.

The undisputed facts show that Prudential made no misrepresentations to Pine belt.  Accordingly, Plaintiff's misrepresentation claim is without merit and must fail.  Summary judgment as to Count Six is granted.

**F.  Negligence**

Count Eight of the Complaint claims that Prudential owed a duty to Pine Belt to ensure that its actions with respect to the Account were in accordance with reasonably accepted standards of an entity holding funds under trust.  (Compl. ¶ 75.)  Plaintiff claims that Prudential breached this duty through negligent acts and omissions in the administration and maintenance of the Account.  (Id. ¶ 76.)

Before a party may be held liable for breach of an obligation, "it must first be established that the party in fact owed a duty to act in a certain manner."  Riggs v. Schappell, 939 F. Supp. 321, 329 (D.N.J. 1996).  There is no evidence to support a claim that Prudential had any duty to Pine Belt.  Further, banking institutions generally do not owe any duty to non-customers absent a special relationship.  See City Check Cashing, Inc. v. Mfr. Hanover Trust Co., 166 N.J. 49, 60 (2001).  The undisputed facts show that Prudential's role was limited to opening and maintaining accounts for its client American Prime.  Any duty owned by Prudential were owed to American Prime and the record demonstrates that Prudential fulfilled them.

The Court, therefore, finds that Prudential did not owe a duty to Pine Belt with respect to the Account.  Accordingly, summary judgment as to Count Eight is granted.

**G.  Conversion**

Count Nine of the Complaint alleges that Prudential converted Pine Belt's funds for their own use and benefit without the authorization of Pine Belt.  (Compl. ¶ 80.)

To succeed on a claim for conversion, a plaintiff must show that he was "deprived of his property by the act of another assuming an unauthorized dominion and control over it."  Erit v. Judge, Inc., 961 F. Supp. 774, 781 (D.N.J. 1997).  Plaintiff has introduced no evidence to show that Prudential's control over the Account was unauthorized.  To the contrary, the undisputed facts show that Prudential transferred money from the Account as directed by National Warranty, an authorized fiduciary.   The Fiduciary Certification authorizes Prudential to accept orders and instructions relative to the Account from any of the named fiduciaries.  In fact, the Fiduciary Certification states that any document executed by a named fiduciary on the Account "shall be conclusive evidence that the fiduciary is authorized to enter into the transactions contemplated." Prudential was fully authorized to comply with the instructions of  Donald Erway, a named fiduciary.

Additionally, Prudential argues that New Jersey law provides a defense against Plaintiff's claim of conversion.  The relevant Uniform Commercial Code ("UCC") provision provides that:

> [a] securities intermediary that has transferred a financial asset pursuant to an effective entitlement order, or a broker or other agent or bailee that has dealt with a financial asset at the direction of its customer or principal, is not liable to a person having an adverse claim to the financial asset....

N.J. Stat. Ann. § 12A:8-115 (West 2005).  Under § 8-102(a)(14)(b), Prudential qualifies as a

-12-

securities intermediary because it maintained a securities account for American Prime and was acting in that capacity.  American Prime qualifies as an entitlement holder since it was identified in Prudential's records as having a security entitlement against the securities intermediary.  Id.. § 8-102(a)(7).  Further, Prudential transferred the funds in the Account pursuant to an effective entitlement order; defined by statute as notification directing transfer or redemption of a financial asset from an entitlement holder.  Id. § 8-102(a)(8).

In response to Prudential's statutory defense, Plaintiff alleges that Prudential acted in collusion with American Prime thereby making § 8-115 inapplicable.  Pursuant to § 8-115(2), a securities intermediary who "acted in collusion with the wrongdoer in violating the rights of the adverse claimant," will not be shielded from liability under the statute.  Plaintiff appears to base its allegations of collusion on the fact that Prudential conducted no due diligence before transferring  funds from the Account. (Pl. Br. 10.)   Plaintiff's bare allegations of collusion are not sufficient to remove Prudential from the scope of the statute.

Comment 5 to § 8-115 specifically addresses the collusion exception and states "[i]t is not the role of the record-keeper to police whether the transactions recorded are appropriate, so mere awareness that the customer may be acting wrongfully does not itself constitute collusion." N.J. Stat. Ann. § 12A:8-115 cmt. 5.  Comment 5 makes clear that Prudential had no duty to inquire into the reasons motivating instructions of an account fiduciary.

Similarly, comment 3 to section 8-115 explains that the section applies even if the intermediary[4] has notice or knowledge that another person asserts a claim to the securities.  The

---

[4] Pine Belt disputes that Prudential's role was 'ministerial,' and alleges that Prudential's involvement was more than that of a securities intermediary.  Plaintiff has produced no evidence however, to support their collusion theory or to show that Prudential did anything more than

comment advises that even where a firm may have direct knowledge of an adverse claim to the securities "the firm should not be placed in the position of having to make a legal judgment about the validity of the claim at the risk of liability either to its customer or the third party for guessing wrong." Id. cmt. 3.  In this case, Prudential's obligation was to follow the instructions of a named fiduciary, Donald Erway of National Warranty, which it has done.

Finally, Prudential argues that the transfer of funds from the Account did not constitute a conversion of Plaintiff's assets because the funds in the Account were not Pine Belt's property. (Def. Br. 12.)  In response, Plaintiff argues they held legal title to the funds under principles of escrow. (Pl. Br. 15.)   Because this Court has already concluded that no conversion occurred because Prudential's actions were authorized, it is not necessary to make this determination.

The Court finds that Prudential's transfer of funds out of the Account at the direction of an authorized fiduciary, as a matter of law, did not constitute a conversion of Plaintiff's assets. Accordingly, summary judgment as to Count Nine is granted.

### H.  Detrimental Reliance

Count Ten of the Complaint alleges a claim of detrimental reliance.  Plaintiff avers that Prudential made certain promises and representations to Pine Belt regarding the Smart Choice Warranty Program.  (Compl. ¶ 82.)  Plaintiff further alleges that it relied to its detriment on Prudential's promises and representations and suffered damages as a result. (Id. ¶¶ 83-84.)

To recover on a claim for promissory estoppel a plaintiff must show (1) that a clear and definite promise was made; (2) the promise was made with the expectation that it would be relied

---

maintain American Prime's account in the ordinary course of business.

upon;  (3) the promise was in fact relied up by the promisee; and (4) the promisee incurred a detriment because of said reliance.  <u>Swider v. Ha-Lo Indus., Inc.</u>, 134 F. Supp. 2d 607 (D.N.J. 2001).  Because Plaintiff has produced no evidence of any promise, statement, or representation made by Prudential to Pine Belt in reference to the Smart Choice Program summary judgment as to Count Ten is granted.

## CONCLUSION

For the foregoing reasons, the Court will grant Defendant Prudential's motion for summary judgment.  An appropriate form of order will be filed herewith.


      __s/ Stanley R. Chesler____
      STANLEY R. CHESLER
      United States District Judge


DATED:     October ___, 2005